UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 25-20438-CR-GAYLES

UNITED STATES OF AMERICA,

　　　　　*Plaintiff*,

vs.

DANIEL GERARDO TORRES,

　　　　　*Defendant*.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿/

## SENTENCING MEMORANDUM

**DANIEL GERARDO TORRES**, through undersigned counsel, respectfully submits this Sentencing Memorandum, pursuant to 18 U.S.C. § 3553(a), and the dictates of *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. In support hereof, **MR. TORRES** submits the following:

## I.
## INTRODUCTION

In 2025, the United States Sentencing Commission (the "Commission") amended the Sentencing Guidelines by removing the departure provisions and policy statements addressing certain personal characteristics of a defendant. *See* United States Sentencing Commission, Guidelines Manual, Ch. 1 Pt. A, 1 (Nov. 2025). The Commission explained that these amendments recognized the post-*Booker* sentencing framework, in which district courts have increasingly relied on the factors set forth in 18 U.S.C. § 3553(a) to impose individualized sentences through variances, rather than through the formal departure provisions of the Guidelines. *Id.*

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

The removal of these departure provisions and related policy statements also reduced the former three-step sentencing analysis to a two-step process. *See* U.S.S.G § 1B1.1. Section 1B1.1 now directs sentencing courts to: (1) calculate the guideline range and determine the sentencing requirements and options under the *Guidelines Manual*; and (2) consider the factors set forth in 18 U.S.C. § 3553(a) to arrive at a sentence that is sufficient, but not greater than necessary, to achieve the statutory purposes of sentencing. *Id.*

In this case, the Presentence Investigation Report (hereinafter "PSR") correctly calculates **MR. TORRES'S** advisory guidelines range as 21 to 27 months' imprisonment, based upon a total offense level of 15 and a criminal history category of II. Pursuant to the plea agreement, the parties jointly recommend that this Honorable Court impose a sentence of 21 months' imprisonment, the low end of the applicable guidelines range. Consistent with the principles articulated by the Supreme Court in *Pepper v. United States*, 562 U.S. 476 (2011), this Sentencing Memorandum is respectfully submitted to provide this Honorable Court with the "[f]ullest information possible" concerning **MR. TORRES'S** "[l]ife and characteristics." *Id.* at 488 "Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Id.*

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

**II.**
## 18 U.S.C. § 3553 FACTORS

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, but not greater than necessary" that accomplishes the purposes of sentencing: (a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. Furthermore, in determining an appropriate sentence, the district court must consider, among other factors, the history and characteristics of the defendant, the nature and circumstances of the offense, the kinds of sentences available, the applicable advisory guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims. *See United States v. Campo*, 695 F. App'x 453, 458 (11th Cir. 2017) (citing 18 U.S.C. § 3553(a)(1)-(7)). The following sections set forth the facts and circumstances relevant to the factors enumerated in 18 U.S.C. § 3553(a) as they apply to **MR. TORRES** and this case.

**A.**
### HISTORY AND CHARACTERISTICS OF MR. TORRES

**MR. TORRES** was born in Miami, Florida, on March 22, 1971, to Sixto Torres, age 89, and Diana Torres, age 83. **MR. TORRES** also has an older sister, Jaquelin Alvarez, who is 64 years old. **MR. TORRES** spent his entire childhood in the Westchester neighborhood of Miami, where he was raised in a close-knit, middle-class family. His father worked as

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

an electrician and his mother was an accountant for Ocean Bank. **MR. TORRES'S** parents are both retired and reside with him at his current residence. **MR. TORRES** has been incredibly fortunate to share a close and enduring bond with his parents, whose love and support has never wavered. And as the letter submitted by **MR. TORRES'S** sister demonstrates, the bond between **MR. TORRES** and his parents is defined not only by their unwavering support for him, but also by his unwavering love, devotion, and commitment to them.

> Together we take care of our elderly parents who are 84 & 89 years old. Two years ago, my family and I moved to Tennessee. My brother encouraged me to go to be with my new granddaughter and stepped in to care for our parents. They both have serious health issues and solely depend on Daniel for their needs and support. Losing his support will be devastating.

The character letters submitted on **MR. TORRES'S** behalf are attached hereto and incorporated by reference herein as Exhibit A.

When **MR. TORRES'S** mother was in her sixties, she was diagnosed with breast cancer and underwent treatment. Although the treatment successfully eradicated cancer, she suffered a rare complication from the radiation therapy that caused extensive damage to her intestines and ultimately resulted in a life-threatening intestinal perforation. She remained hospitalized for more than a year, underwent over five (5) highly invasive surgeries, endured constant excruciating pain, and gradually began to lose hope. At one point, even **MR. TORRES'S** father feared that she would not survive. **MR. TORRES**, however, refused to accept that outcome.

Determined to find another option, he devoted countless hours to researching her condition until he located a specialist with experience treating patients suffering from the

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

same rare complication. He arranged the consultation and remained by her side throughout the process, ensuring she had everything she needed to undergo life-saving surgery. Because of **MR. TORRES'S** refusal to give up on his mom, she not only survived but has enjoyed the past two (2) decades with her family. She has been able to watch her grandchildren grow and is now blessed to know her great-grandchildren as well.

More recently, when **MR. TORRES'S** sister – who had long shared the responsibility of caring for their aging parents – expressed a desire to relocate to Tennessee with her daughter and newborn granddaughter, **MR. TORRES** immediately encouraged her to do so. Without hesitation, he assured her that he would assume full responsibility for their parents' care so that she could begin this new chapter of her life with peace of mind. *See* Exhibit A. When his sister relocated to Tennessee two (2) years ago, **MR. TORRES**, together with his partner and their two (2) young children, moved into his parents' home so that he could care for them full-time. Since then, he has served as their sole caregiver. Today, **MR. TORRES'S** father is 89-years old, and his mother is 83-years old. Both suffer from significant health issues and depend entirely on **MR. TORRES** for their daily care, support, and well-being. *See* Exhibit A.

**MR. TORRES** is a father to five (5) children, Tiffany Padilla, age thirty-three (33), Michelle Padilla, age thirty-one (31), Danial Gerardo Torres, Jr., age twenty-two (22), Ruben Alvarez-Gil, age twelve (12), and Brandon Sixto Torres age nine (9). If **MR. TORRES'S** devotion to his parents and sister is any indication of his character, his devotion to his children is even greater.

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

MR. TORRES'S three eldest children are from his first marriage to Jacqueline Padilla, now fifty-five (55) years old. When MR. TORRES and Ms. Padilla began their relationship, she had two (2) young daughters from a previous relationship: Tiffany, who was two (2) years old, and Michelle, who was just six (6) months old. MR. TORRES embraced both girls as his own – indeed, he has never viewed them as anything other than his daughters.

Although MR. TORRES and Ms. Padilla divorced after six (6) years of marriage, his commitment to Tiffany and Michelle never changed. He continued to love, support, and raise them, and he remains an active and devoted father in their lives. Mr. Torres's daughter, Michelle, recalls the tremendous impact that MR. TORRES, or "Papi Danny" as she calls him, had on her life:

> Papi Danny isn't my biological father but unquestionably takes the father figure in my life. He stepped up when my dad couldn't or didn't. He is the man I remember holding hands with during our various Disney trips growing up. The one who would tickle my feet in bed on Sunday mornings when we would watch movies together in bed as a family. The man that cared for my sister and I, protected us and loved us unconditionally like we were his own even though we weren't. He is a loyal man and friend. A true family man.
>
> Even after his marriage to my mother ended, our relationship never did. He continued to check on me, support me, and take an active interest in my life. He made sure I always knew I had a father figure who loved me and wanted the best for me.
>
> . . .
>
> The example he set had a lasting impact on my life. Because of the love, stability, and leadership he provided, I was able to recognize those same qualities when choosing my husband. Today, I am happily married and the mother of an eight-month-old son. It means so much to me that my son has the opportunity to know the man who helped shape me into the person I am today.

*See* Exhibit A.

His daughter, Tiffanny, also describes her incredible relationship with "Papi Danny"

and his unwavering support:

> While he is technically my ex- stepfather, I have always known Daniel as "Papi Danny." He came into my life when I was only two years old, and from that day forward, he stepped into the role of a father. My mother and Papi Danny divorced when I was thirteen years old, but even now, nearly twenty years later, I still call him Papi. He has remained one of the most important and consistent people in my life.
>
> I was not always an easy child to raise. I was independent, rebellious, and often tested boundaries but no matter what challenges I created, Papi Danny never turned his back on me. Through every stage of my life, Papi Danny never gave up on me. He provided a roof over my head, food on the table, guidance when I needed it, and the reassurance that no matter what happened, I could always count on him. He showed me what it meant to be dependable, responsible, and present.
>
> As an adult, that has never changed.
>
> . . .
>
> He is a loving husband, a devoted father, a proud grandfather to my 7 month old nephew, a caring son to his elderly parents, and a supportive brother to his older sister and her family. He has always been the person family members call when they need help because they know he will show up. I have witnessed firsthand the love he has for his children and the sacrifices he makes to provide for them. He carries a deep sense of responsibility toward the people he loves and works tirelessly to ensure they are cared for.
>
> When I think of Papi Danny, I think of loyalty. I think of generosity. I think of someone who has spent decades showing up for others, often without expecting anything in return. The fact that I still look to him as a father nearly twenty years after he and my mother divorced speaks to the kind of bond he built and the kind of man he is. Blood alone does not make someone a father. Love, commitment, sacrifice, and consistency do. Papi Danny has demonstrated those qualities throughout my entire life.

*See* Exhibit A.

Today, Tiffany and Michelle are both successful real estate agents, happily married, and devoted mothers. Likewise, **MR. TORRES'S** son, Daniel Jr. – a paralegal in New Jersey who is pursuing a law degree – describes in his heartfelt letter to this Honorable Court the unwavering love, guidance, and support his father has provided throughout his life and continues to provide today.



> For as long as I can remember, my father has been a part of my life every step of the way. From early Judo tournaments to honor roll assemblies, and even the occasional run to the movies, "Papi," as I call him, is the reason I am the man I am today. My purpose has always been to make him proud. My goal has always been to be to others what my father has been to me and to the people around him.
>
> He is the type of person who always answers the call when someone needs help. He loves unconditionally and never asks for anything in return. Above all else, he puts his family first. He is the kind of person who would go hungry so that others could eat. Every night, he would put me to bed and stay until I fell asleep because I was afraid of the dark. Every morning, he made sure I was ready for school. On every first day of school, he was there to document the moment. He was never absent from my life. He always made sure I had a father in my corner to guide me through the crazy experience we call life.
>
> . . .
>
> He is one of the most loyal, generous, and loving people a family member or friend could ever ask for.
>
> . . .
>
> My father used to tell me, "I love you, infinity times infinity." As a child, I simply thought it meant that he loved me a lot. As an adult, I now understand what he truly meant. It means that no matter what happens, he will always be there for me and for anyone who needs him. It means that he will always put others before himself. Most importantly, it means that even when his time on this Earth is over, his love for his family will remain.

As I grew older, my relationship with my father only strengthened, to the point where he became my best friend. I know every father and son may say that, but there is truly no relationship like the one we share.

*See* Exhibit A.

Since 2014, **MR. TORRES** has been in a loving and committed relationship with Nicole Pedrera. Together, they are raising two young boys, Ruben and Brandon. Although Ruben is not **MR. TORRES'S** biological son, **MR. TORRES** entered his life when he was just an infant and has loved and raised him as his own ever since. In every sense of the word, **MR. TORRES** is Ruben's father. Ms. Pedrera describes **MR.**





**TORRES** as a devoted, loving, and deeply involved father who plays an active role in every aspect of Brandon's and Ruben's lives – from taking them to and from school, going to doctor's appointments, and attending sports practices and games, to participating in school functions and all family celebrations. As Ms. Pedrera describes in her letter to this Honorable Court,

He is the parent who is always present, whether it is helping with school responsibilities, attending sporting events, or providing guidance and encouragement.

*See* Exhibit A.

When Ms. Pedrera's mother was diagnosed with breast cancer, **MR. TORRES** insisted that her parents move into their home so they could care for them during her treatment. As her condition worsened, **MR. TORRES** assumed primary responsibility for

caring for Brandon and Ruben, allowing Ms. Pedrera to spend every possible moment with her mother during the final months of her life.

Sadly, shortly after **MR. TORRES'S** PSR interview, Ms. Pedrera's mother passed away following her difficult battle with breast cancer. Her loss has been devastating to the entire family, particularly to Ms. Pedrera, who shared an extraordinarily close relationship with her mother, and to Brandon and Ruben, who were deeply attached to their grandmother. The family's hardship has only been compounded by the fact that Ms. Pedrera's father is now battling leukemia. Ms. Pedrera's letter poignantly captures the profound impact **MR. TORRES** has on their family:

> The hardship our family is already enduring cannot be overstated. We are still grieving the loss of my mother, while at the same time facing my father's ongoing battle with leukemia and the declining health of Daniel's elderly parents. Our children have already experienced significant emotional stress and uncertainty, and they depend on Daniel every day for stability, guidance, and reassurance. The prospect of losing his daily presence is heartbreaking for them. They are frightened, confused, and struggling with the possibility that the person they rely on most may no longer be there to support them through their daily lives.

*See* Exhibit A.

The common thread running constant throughout **MR. TORRES'S** life is his unwavering commitment to the people he loves. Whether caring for his parents, supporting his sister, raising his children, or standing beside his partner during unimaginable hardship, **MR. TORRES** has consistently placed the needs of his family above his own. That steadfast devotion speaks far more eloquently to his character than any number of words ever could.

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

**MR. TORRES** is also deeply involved in his community. Specifically, **MR. TORRES** has participated in and led many Emmaus retreats. Emmaus is a faith-based ministry for men that, among other things, hosts three-day retreats designed to foster personal, emotional, and spiritual growth. **MR. TORRES** has openly shared the obstacles and mistakes that have shaped his life in the hope that others might learn from his experiences and, at the very least, know that they will always find a source of encouragement and support in him.

**MR. TORRES'S** life reflects decades of unwavering devotion to his family, steadfast responsibility to those who depend upon him, and a genuine commitment to personal growth. Although his background does not excuse his conduct, it provides essential context for evaluating his history and characteristics and supports the imposition of a sentence that is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

### B.
### NATURE OF THE OFFENSE

There is one decision that **MR. TORRES** made in his early adulthood that has unfortunately cast a long shadow over **MR. TORRES'S** entire life: his decision to use cocaine. That single decision became the catalyst for many of the hardships and poor choices that followed, some more serious than others. What began as one terrible

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

decision ultimately developed into a lifelong struggle with addiction – one that **MR. TORRES** continues to confront every day.[1]

Addiction is no longer viewed as a lack of willpower, a moral failure, or an indifference to the law. *United States v. Hendrickson*, 25 F.Supp.3d 1166, 1171-76 (N.D. Iowa June 111, 2014). Addiction is now rightly identified as a serious medical condition, *i.e.*, "[a] chronic, relapsing brain disease[,]" which may be contracted "[i]nnocently or involuntarily." *Id.* Although experimentation with drugs is common, only some people experience the neurobiological changes that permanently alter the brain's structure and functioning, ultimately resulting in addiction. *Id.* Moreover, while recovery from addiction is possible, there is no cure for the disease. Addiction is a chronic, lifelong illness. Even after years of sobriety, it can resurface unexpectedly, requiring daily effort and ongoing treatment.

For over fifteen (15) years, **MR. TORRES** was successful in remaining sober – he showed that he is capable of recovery. During that time, **MR. TORRES** built a successful and productive life. He excelled professionally, rising through the ranks of one of South Florida's premier design and development firms, ultimately earning a six-figure salary and managing numerous employees. He also met his current partner, with whom he has shared a loving and stable relationship for more than a decade, while continuing to devote himself to his children and his extended family. Unfortunately, in mid-late 2025, **MR.**

---

[1]     It is important to note that **MR. TORRES'S** addiction is primarily self-destructive. As the sentencing letters submitted on his behalf reflect, **MR. TORRES** has consistently placed the needs of his family above his own, and therefore, the person most harmed by his addiction has been **MR. TORRES**.

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

**TORRES** relapsed, and within a short time of his relapse, **MR. TORRES** was arrested in this case.

**MR. TORRES** does not offer his addiction as an excuse for his conduct. **MR. TORRES** fully recognizes that it is his own actions that have brought him before this Honorable Court, and in that vein, he has taken significant steps towards his recovery. Rather, he offers it as the context necessary to understand how a man who spent years living a productive, responsible, and family-centered life ultimately found himself before the court once again. The facts underlying **MR. TORRES'S** conviction also distinguish this case from his past and provide important context.

As stated in the Factual Proffer adopted by **MR. TORRES**, from May 16, 2025, through September 16, 2025, the Government intercepted over eleven thousand (11,000) conversations related to the Reinaldo Fernandez drug trafficking organization. Not a single intercepted communication involved **MR. TORRES** or even mentioned his name. Indeed, the first-time law enforcement ever identified or became aware of **MR. TORRES** in connection with this investigation was on the day of his arrest during the traffic stop of his vehicle.

Consistent with the discovery produced in this case, **MR. TORRES** has never communicated with Mr. Fernandez or Javier Garcia Mora. Indeed, prior to September 11, 2025, **MR. TORRES** had no contact or interaction whatsoever with either individual. Likewise, the only physical surveillance purportedly depicting **MR. TORRES** relates to the date of his arrest. Although law enforcement acknowledged that the pole camera was operational that day, it represented that the camera inexplicably failed to record the very

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

events at issue. Thus, the only surveillance that could have captured **MR. TORRES'S** conduct on the sole day he was involved in this case does not exist. Had the camera been operational, it would have shown **MR. TORRES'S** actual role as a chauffeur to Mr. Oramas Valdes so that he could obtain cocaine for personal use.

On September 11, 2025, law enforcement did intercept numerous phone calls between Mr. Fernandez and Ricardo Oramas Valdes, a 74-year-old family friend of **MR. TORRES** who also worked in construction. During those conversations, Mr. Oramas Valdes explained to Mr. Fernandez that he had been in the hospital and had undergone two (2) surgeries. Mr. Oramas Valdes further explained that he had just been discharged and was leaving the hospital. Shortly thereafter, Mr. Oramas Valdes advised Mr. Fernandez that he could not drive and asked whether it would be okay for a friend to drive him to his house, to which Mr. Fernandez responds "yes, that is okay." Mr. Fernandez then telephoned Mr. Oramas Valdes to let him know that he had arrived at his residence. During the call, Mr. Fernandez asked whether Mr. Oramas Valdes wanted any boxes of shellfish. Mr. Oramas Valdes responded that he did, and when Mr. Fernandez asked if he wanted one (1) Mr. Oramas Valders replied that he wanted four (4).

Later that evening, **MR. TORRES** drove Mr. Oramas Valdes to Mr. Fernandez's house. Once at Mr. Fernandez's residence, law enforcement observed Mr. Fernandez and Mr. Garcia Mora exit the Hialeah residence with an object that they placed in the rear passenger seat of **MR. TORRES'S** vehicle. Shortly thereafter, law enforcement conducted a traffic stop of **MR. TORRES'S** vehicle citing "driving too fast for conditions."

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

During the traffic stop, a narcotics detection canine alerted to the presence of narcotics in the vehicle. Based upon the canine alert, law enforcement searched the vehicle and recovered a bucket containing cocaine. Law enforcement also seized $3,349.00 from **MR. TORRES'S** person, and he was arrested at the scene. Mr. Oramas Valdes, however, was not arrested. According to law enforcement, he was not taken into custody because of his medical condition, including the fact that he had a colostomy bag.

**C.**
**MR. TORRES'S POST-ARREST CONDUCT, FAMILY SUPPORT, AND EMPLOYMENT**

Since his arrest in this case, **MR. TORRES** has taken significant steps towards his recovery. On March 6, 2026, **MR. TORRES** successfully completed a substance abuse treatment program. Moreover, since October 23, 2025, *i.e.*, after he enrolled in substance abuse treatment, **MR. TORRES** has submitted twenty-seven (27) urinalyses negative for the presence of illicit substances. **MR. TORRES** is back in recovery.

In addition to his role as a devoted father, partner, brother and son, **MR. TORRES** also has the unwavering support of his loving family. His long-time girlfriend has stood by his side throughout this process, offering constant emotional support. The dedication of his girlfriend and family underscores the strong personal foundation that **MR. TORRES** has built. Their loyalty and commitment to him demonstrate that he is not alone in his struggle, and that he has a network of people who care deeply for him and are invested in his future success.

Finally, **MR. TORRES** continues to have the unwavering support of his employer, Mocca Construction LLC (hereinafter "Mocca Construction"). In this regard, it is particularly telling that, despite **MR. TORRES'S** arrest and subsequent conviction in this

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

case, Mocca Construction has chosen not only to retain him as an employee, but also to advocate on his behalf before this Honorable Court. Indeed, the owner of Mocca Construction personally submitted a letter attesting to **MR. TORRES'S** character, work ethic, and integrity. Such confidence from an employer of Mocca Construction's size and reputation speaks volumes about the trust and respect **MR. TORRES** has earned through years of hard work and dedication.

> During his time with our company, Mr. Torres has consistently shown himself to be a respectful, dependable, and hardworking individual. He is always punctual, takes his responsibilities seriously, and approaches his work with professionalism and care. Over the years, he has earned the trust of both management and his coworkers through his honesty, strong work ethic, and consistent reliability. Mr. Torres is also a strong leader. He leads by example, works well with others, and helps create a productive and respectful work environment. He has been an important part of our company, not only because of his skills and experience, but because of the integrity and personal responsibility he brings to his work every day. Based on my experience working with him over many years, I can say without hesitation that Daniel Torres is a trustworthy and responsible person of good character.

*See* Exhibit A.

### III.
### CONCLUSION

There is no question that **MR. TORRES** exercised poor judgment when he committed the acts that form the basis for this case, and for that he has accepted responsibility. There is, however, an equally compelling truth: **MR. TORRES** was not a member of the broader Fernandez drug trafficking organization. Rather, his involvement was limited to the isolated conduct underlying this offense.

Just as importantly, **MR. TORRES** is far more than the errors he has made in his life. The letters submitted to this Honorable Court paint a consistent picture of a man whose

Rabin & Lopez, P.A., One Southeast Third Avenue, Suite 2600, Miami, FL 33131 • Telephone (305) 358-1064

life has been defined by service to others – especially to his family. Time and again, he has stepped forward when others have stepped away. He not only assumed the responsibilities of a father to children whose fathers were absent in their lives; he became their super father. He provided them with the love, guidance, stability, and support they otherwise lacked even after he was no longer married to their mother. He continues to be "Papi Danny". Those who know him best describe him by his generosity, dependability, compassion, and unwavering commitment to his family and community.

As the 3553(a) factors illustrate, not all defendants stand before the sentencing court on equal footing. While every defendant must be held accountable for his conduct, § 3553(a) requires the district court to consider the history and characteristics of the individual before it. Here, those characteristics strongly favor leniency.

MR. TORRES has dedicated his life to improving the lives of others, often placing their needs above his own. He has worked tirelessly to support his family, mentor those around him, and provide stability where others failed to do so.

Moreover, since this offense MR. TORRES has re-committed himself to his recovery and has made meaningful progress toward maintaining his sobriety. Equally significant, these proceedings have demonstrated that he is surrounded by an extraordinary network of family members, friends, and an employer who remain steadfast in their commitment to supporting his continued rehabilitation. Their unwavering support provides this Honorable Court with every reason to believe that MR. TORRES will continue on the path he has already begun.

Respectfully submitted,

**RABIN & LOPEZ, P.A.**
1 SE 3rd Avenue, Suite 2600
Miami, FL 33131
Tel: 305•358•1064
Email: sjr@miamilawyer.com

s/ *Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

s/ *Andrea C. Lopez*

ANDREA C. LOPEZ
Florida Bar № 109512

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of June 2026, a true and correct copy of the foregoing was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

s/ *Samuel J. Rabin, Jr.*

SAMUEL J. RABIN, JR.